ROBERT J. ROSATI, California State Bar #112006
robert@erisalg.com
RAQUEL M. BUSANI, California State Bar #323162
raquel@erisalg.com
6485 N. Palm Avenue, Suite 105
Fresno, California 93704
Telephone: 559-478-4119
Telefax: 559-478-5939

Attorneys for Plaintiff,
*CORINA CAMPA*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CORINA CAMPA,<br><br>               Plaintiff,<br><br>vs.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY,<br><br><br>               Defendant. | CASE NO.:  5:24-cv-00576-EJD<br><br>**PLAINTIFF'S NOTICE OF NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION OF THE ISSUES; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:**     April 29, 2025<br>**Time:**     2:00 p.m.<br>**Location:**  San Jose Courthouse,<br>280 South First Street, San Jose, CA 95113<br>**Courtroom:** 7, 4th Floor<br>**Judge:**    Eumi K. Lee |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION/ISSUES PRESENTED ............................................. 1

I.      INTRODUCTION ........................................................................................ 1

II.     UNITED'S JUDICIAL ADMISSIONS ........................................................ 2

III.    SUMMARY OF ARGUMENTS ................................................................... 3

IV.     APPLICABLE LEGAL STANDARDS ........................................................ 4

V.      STATEMENT OF FACTS ........................................................................... 5

VI.     UNITED CANNOT MEET ITS BURDEN OF PROOF TO
        RESCIND THE POLICY ........................................................................... 12

        A.    United Has the Burden to Prove a Material Misrepresentation ............... 12

        B.    Ms. Husmann's Reports and Testimony / Other Evidence ..................... 13

        C.    Ms. Husmann's Opinions that: (1) Juan Carlos Misrepresented His Smoking History;
              and (2) Such Misrepresentation Was Material Are Inadmissible .................................... 14

              1.    Expert Opinion of Undesignated Expert ................................................ 14

              2.    Husmann's opinions are expert not lay opinions. ................................. 15

              3.    Lay or expert opinions based on speculation are inadmissible .......................... 15

              4.    Ms. Husmann's Opinion that Juan Carlos misrepresented his smoking
                    history is pure speculation. .................................................................. 16

              5.    Ms. Husmann's 9/7/2023 Report is not admissible as a business record. ........... 18

              6.    Ms. Husmann's deposition opinion about the 7/26/2020 medical record is
                    inadmissible because it violates the Best Evidence Rule. ...................................... 18

              7.    No reasonable jury could believe Ms. Husmann's testimony about the
                    meaning of her first report. .................................................................. 18

              8.    The Current Some Day Smoker" Evidence is Hearsay Inadmissible
                    Pursuant to FRE 803(4). ....................................................................... 19

        D.    Conclusion ........................................................................................... 19

VII.    CORINA CAMPA IS ENTITLED TO PREVAIL ON BREACH OF CONTRACT 20

VIII.   UNITED ACTED IN BAD FAITH ............................................................ 20

IX.     CONCLUSION .......................................................................................... 23

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

# TABLE OF AUTHORITIES

**CASES**

*American Title Ins. Co. v. Lacelaw, Corp.*, 861 F.2d 224 (1988) ...................................................... 2

*Atmel Corporation v. St. Paul Fire & Marine Insurance Company*, 416 F. Supp. 2d 802
  (N.D. Cal. 2006) ........................................................................................................... 12, 13

*Barnes v. Arden Mayfair, Inc.*  759 F.2d 676 (9th Cir. 1985) .......................................................... 4

*Bosetti v. United States Life Insurance Company, etc.,* 175 Cal. App. 4th 1208 (2009) ................ 22

*Burns v. Prudential Ins. Co. of America,* 201 Cal. App. 2d 868 (1962) ........................................ 13

*Burroughs v. City of Tucson*, 795 Fed. Appx. 1003 (9th Cir. 2020) ............................................... 18

*Certain Underwriters at Lloyd's v. Sinkovich*, 232 F.3d 200 (4th Cir. 2000) ............................... 15

*Crump v. Northwestern National Life Ins. Co.*, 236 Cal. App. 2d 149 (1965) .............................. 22

*Downey v. Bob's Discount, Inc.*, 633 F.3d 1  (1st Cir. 2011) ......................................................... 14

*Egan v. Mutual of Omaha Ins. Co.,*24 Cal. 3d 809 (1979) ............................................................ 20

*Estate of Stern and Tuscan Retreat, Inc.*, 725 Fed. Appx. 518 (9th Cir. 2018) ............................ 19

*Fresno Motors, LLC v. Mercedes Benz USA, Inc.*, 771 F.3d 1119 (9th Cir. 2014) .......................... 4

*Goodman v. Staples, The Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011) .......................... 14

*Guam v. Ignacio*, 10 F.3d 608 (9th Cir. 1993) .............................................................................. 19

*Guebara v. Allstate Insurance Co.,*237 F.3d 978 (9th Cir. 2001) .................................................. 20

*Guidroz-Brault v. Missouri Pacific Railroad Company*, 254 F.3d 825 (9th Cir. 2001) ................. 15

*Hughes v. Blue Cross of Northern California*, 215 Cal. App. 3d 832 (1989) ................................. 21

*Juan H. v. Allen*, 408 F.3d 1262 (9th Cir. 2005) ........................................................................... 17

*Kincer v. Reserve Insurance Co.*, 11 Cal. App. 3d 714 (1970) ...................................................... 22

*Klees v. Liberty Life Insurance Company of Boston,* 110 F. Supp. 3d at 978 (C.D. Cal. 2015)..... 20

*Lakeside-Scott v. Multnomah County*, 556 F.3d 797 (9th Cir. 2009) .............................................. 4

*Los Angeles News Service v. CBS Broadcasting, Inc.*, 305 F. 3d 924 (9th Cir. 2002) ................... 18

*Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617 (1996) ......................................... 21

*Martinez v. United States*, 997 F.3d 867 (9th Cir. 2021) ............................................................... 15

*Meyer v. Johnson*, 7 Cal. App. 604 (1935) .................................................................................... 22

Case No.: 4:21-cv-6469-RS

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

*Neely v. St. Paul Fire and Marine Ins. Co.*, 584 F. 2d 341 (9th Cir. 1978) ................................... 16

*O'Riordan v. Federal Kemper Life Assurance Co.*, 36 Cal. 4 281 (2005) .................................... 23

*Ollier v. Sweetwater Union High School District*, 768 F.3d 843 (9th Cir. 2014) .......................... 16

*Paddock v. Dave Christensen, Inc.*, 745 F. 2d 1254 (9th Cir. 1984) .............................................. 18

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Cit 1769 (2007) .......................................................... 18

*Seiler v. Lucas Films, LTD*, 808 F.2d 1316 (9th Cir. 1986) ........................................................... 18

*Shade Foods, Inc. v. Innovative Products Sales and Marketing, Inc.*,
    78 Cal. App. 4th 847 (2000) ...................................................................................................... 20

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978 (9th Cir. 2007) ................................................... 4

*Stevens v. Union Pacific Railroad Co..*, 935 F.3d 852 (9th Cir. 2019) .......................................... 16

*Teen-Ed v. Kimball International, Inc.*, 620 F.2d 399 (3d Cir. 1980) ............................................ 15

*Timpson v. Anderson County Disabilities and Special Needs Board*,
    31 F.4th 238 (4th Cir 2022) ...................................................................................................... 14

*Thompson v. Occidental Life Insurance Co.*, 9 Cal. 3d 904 (1973) ........................................ 12, 13

*United States v. Barragan*, 871 F.3d 689 (9th Cir. 2017) ............................................................. 15

*United States v. Figueroa-Lopez*, 125 F. 3d 1241, 1246 (9th Cir. 1997) ...................................... 15

*United States v. Gadson*, 763 F.3d 1189 (9th Cir. 2014) .............................................................. 16

*United States v. Jimenez-Chaidez,* 96 F. 4th 1257 (9th Cir. 2024) ................................................ 15

*United States v. Kootswatewa*, 893 F.3d 1127 (9th Cir. 2018) ...................................................... 19

*United States v. Latu*, 46 F. 4th 1175 (9th Cir. 2022) ................................................................... 19

*United States v. Perez*, 962 F.3d 420 (9th Cir. 2020) .................................................................... 16

*United States v. Workinger* 90 F.3d 1409 (9th Cir. 1996) ............................................................. 18

*Verzosa v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 589 F. 2d 974 (9th Cir, 1978) .................. 2

*Williams v. National Western Life insurance Company*, 78 Cal. App. 5th 500 (2022) ................. 23

*Wilson v. 21st Century Insurance Company*, 42 Cal. 4th 713 (2007) ....................................... 21, 23

**Other Authorities**

California Insurance Code § 1704.5 ................................................................................................. 22

**Rules**

Fed. R. Civ. P. § 26(a)(2)(C) ........................................................................................................... 14

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

Fed.R.Evid. 803(4) ................................................................................................................. 3

*FRE* § 613 ............................................................................................................................. 18

FRE § 803(6) ........................................................................................................................ 18

FRE 803(4) ........................................................................................................................... 19

iv                                              Case No.: 4:21-cv-6469-RS

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

## NOTICE OF MOTION AND MOTION/ISSUES PRESENTED

NOTICE IS HEREBY GIVEN that on Tuesday, April 29, 2025, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at San Jose Courthouse, 280 South First Street, San Jose, CA 95113, Courtroom: 7, 4th Floor, before the Honorable Eumi K. Lee, Plaintiff Corina Campa ("Campa"), will and hereby does move the Court to summarily adjudicate the following issues pursuant to the Federal Rules of Civil Procedure Rule 56 against Defendant United of Omaha Life Insurance Company ("United"):

1.    United cannot meet its burden of proof on its Third Defense to rescind the Policy.

2.    Corina Campa is entitled to prevail on her breach of contract claim.

3.    United acted in bad faith by rescinding The Policy and denying Campa's claim for life insurance benefits and it cannot establish its Second, Fourth, and Fifth Defenses.

This motion is made pursuant to Federal Rules of Civil Procedure Rule 56 and LR 7-1 and 56. This motion is based upon; (1) the arguments stated herein; (2) Declaration of Corina Campa and exhibits referenced therein and filed herewith; (3) the Declaration of Robert J. Rosati and the and exhibits referenced therein and filed herewith; and (4) the papers, records, and pleadings on file in this action, and (5) upon such other matters and/or argument as may be presented to the Court at or before the time of the hearing.

Plaintiff, through counsel for Plaintiff declares that she has met and conferred on several occasions with defense counsel Robert Hess in an effort to resolve the issues in this case. Despite good faith efforts, the parties have been unable to fully resolve these issues and have agreed to resolve them through cross-motions for summary adjudication.

## I.    INTRODUCTION

Campa sues United for breach of contract - - a life insurance policy purchased on Campa's son, Juan Carlos Campa ("Juan Carlos"). When Juan Carlos died within two years of issuance of the policy, United conducted a "contestable claim" investigation, rescinded the policy and denied Campa's claim, asserting Juan Carlos made a misrepresentation on the application about his smoking history and did not sign the application. Campa retained counsel, who challenged that decision in a letter to United's general counsel. That letter caused United to

1

reopen its investigation and reverse its decision based on its reason that Juan Carlos did not sign the application, but uphold its decision based on the conclusion that Juan Carlos misrepresented his smoking/use of tobacco history.

There is and was no evidence to support rescission based on Ms. Husmann's speculation that Juan Carlos did not sign the application. There is no evidence - - just speculation and Ms. Husmann's inadmissible opinions based on that speculation - - and no admissible evidence - - to support the decision to rescind the policy based on Juan Carlos's claimed use of tobacco. Therefore, the rescission is without merit and Campa is entitled to prevail on her claim for breach of contract. Second, while United investigated whether it should rescind the policy, it made no effort to investigate whether it should pay the claim, failing to pursue even the most elementary evidence to support Campa's claim. This was bad faith as a matter of law.

## II. UNITED'S JUDICIAL ADMISSIONS

Admissions in pleadings are generally binding on the parties and the court. *American Title Ins. Co. v. Lacelaw, Corp.*, 861 F.2d 224, 226 (1988). Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them. *Id.* Unlike ordinary evidence, an admission serves to set aside a fact that is uncontested. Therefore, the admitting party cannot later controvert that fact with new evidence or argument and the opposing party is entitled to rely upon the conclusive and binding effect of the judicial admission. *Verzosa v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 589 F. 2d 974, 977 (9th Cir, 1978). Similarly, "[a] stipulation of fact has the force of a finding." *Id.*

United made binding judicial admissions in its Answer and may not offer evidence contrary to those binding judicial admissions. LaRae Husmann's five reports are quoted at length in the Complaint. See Complaint (ECF Doc. No. 1) ¶¶ 58, 80, 83, 90.B., and 107. United responded to each of those paragraphs identically, referencing the allegations in the Complaint and asserting, "Defendant alleges that is claims investigation activities are reflected in documents contained in Defendant's file pertaining to plaintiff's claim for benefits and Defendant further alleges that such documents speak for themselves and are the best evidence of their contents. Except as so admitted and alleged, Defendant denies the allegations in this paragraph." See

2

Answer (ECF Doc. No. 29), ¶¶ 58, 80, 83, 90, and 107. Ms. Husmann's litigation testimony about her reports - - specifically, the content of her first memo, which is contrary to and not reflected in any of her work in United's file, all of which is set forth in Exhibits "1" – "12", contradicts United's judicial admissions and therefore is inadmissible, as is any testimony that the "current some day smoker" evidence is sufficient to prove a misrepresentation.

### III. SUMMARY OF ARGUMENTS

United cannot meets its burden of proof on its affirmative defense of rescission: (1) that Juan Carlos made a misrepresentation on the application; and (2) that the claimed misrepresentation was material.

United relies on three pieces of evidence to support its rescission: (1) the single "current some day smoker" medical record from Regional Medical Center of San Jose; (2) LaRae Husmann's opinion in her deposition, contrary to her written report, that in her report she concluded that there was evidence of a tobacco use misrepresentation, plus other lay opinion evidence to that effect; and (3) Ms. Husmann's opinion in her 9/7/2023, report, after United received and in response to a threat of litigation, that United would not have issued the Policy.

Ms. Husmann's deposition testimony opinion concerning the "current some day smoker" evidence is inadmissible because it: (1) is in violation of the Best Evidence Rule; (2) contradicts United's judicial admissions in its Answer, as does United's lay opinion testimony on that point; (3) does not create a triable issue of fact for summary judgment purposes because it is blatantly contradicted by the documentary evidence; and (4) is inadmissible as either lay or expert opinion because it is pure speculation and conjecture. (5) United did not designate Ms. Husmann as an expert witness so her two relevant opinions, based on her specialized knowledge, are inadmissible as expert opinion testimony. (6) Ms. Husmann's 9/7/2023, report, is inadmissible as a business record because it was created in response to a threat of litigation. (7) The referenced "current some day smoker" medical record is hearsay not admissible pursuant to Fed.R.Evid. 803(4). Thus, United's rescission defense fails for lack of evidence. Therefore, Campa's breach of contract claim is a foregone conclusion: only the amount of prejudgment

3

interest is left for determination on <u>that</u> claim.

United did not conduct a reasonable investigation and Campa is entitled to summary adjudication of her bad faith <u>claim</u> (not the amount of damages) of bad faith.  United's witnesses admitted they made no effort to obtain evidence to <u>support</u> the claim and the evidence is undisputed that the decision to rescind the policy was based on speculation by Ms. Husmann.

## IV.  APPLICABLE LEGAL STANDARDS

Where the moving party will have the burden proof on an issue at trial, the party moving for summary judgment must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, the moving party can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).   In judging evidence at the summary judgment stage, the court draws all inferences in the light most favorable to the nonmoving party.  The evidence presented by the parties must be admissible.  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issue of fact and defeat summary judgment. *Id.* at 984.

Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts. *Fresno Motors, LLC v. Mercedes Benz USA, Inc.*, 771 F.3d 1119, 1125 (9th Cir. 2014).  "A party opposing summary judgment is entitled to the benefit of only <u>reasonable</u> inferences that may be drawn from the evidence put forth. . .  A reasonable inference is one which supports a viable legal theory (citation omitted), which by necessary implication cannot be supported by only threadbare conclusory statements instead of significant probative evidence." *Barnes v. Arden Mayfair, Inc.*  759 F.2d 676, 680 (9th Cir. 1985), internal quotations omitted; *Lakeside-Scott v. Multnomah County*, 556 F.3d 797, 802 (9th Cir. 2009): same.  "An inference is reasonable when it may be drawn from the evidence without resort to speculation." *Lakeside-Scott, supra* at 807-808.

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

## V.  STATEMENT OF FACTS

1.    Corina Campa applied for the policy with a manually signed application.  Campa Decl. ¶ 2.

2.    An electronic application was submitted on December 30, 2020.  Ex. "20": Ex. "267": Heim Depo 62:18 – 63:17; Campa Decl. ¶ 3.

3.    Michelle Heim is an underwriter who approved the application.  Ex. "267": Heim Depo 14:13-19, 63:15-23.

4.    United issued Policy/Certificate number BU3032410 to Campa (hereinafter "The Policy").  Complaint/Answer ¶ 18; Ex." "226-A", "267": Ex. "267": Heim Depo 85:9-22.

5.    The death benefit is $100,000, plus interest. Complaint/Answer ¶ 21; Ex. "226-A"

6.    Juan Carlos Campa died on November 12, 2021. Complaint ¶ 22; Answer ¶ 22.

7.    United wrote Campa that, "because the policy is less than two years old and we are permitted to verify the answers to the questions on the application dated 12/30/2020," and requested certain documents.  Ex. "227": Campa Decl. ¶ 11.

8.    A claim made within two years of issuance of a policy is called a "Contestable Claim."  United has employees, called the "FOCAS Team," whose duties include investigating and deciding contestable claims.  Ex. "264": Daniel Depo 16:10-15, 17:7-12, 27:7-9, 107:7-23; Ex. "270": Yates Depo 13:11-19, 22:13-21.

9.    Corina Campa returned the completed and signed claim forms.  Campa Decl. ¶ 11; Ex. "91".

10.    By letter dated May 24, 2022, United thanked Campa for returning the signed claim forms. Ex. "233".

11.    United obtained records on June 29, 2022, from Regional Medical Center of San Jose.  Ex. ""60" shows a 07/26/2020 Emergency Room visit record for which the provider is Olivia Wu, PA - - who asked no questions about smoking.  United 766-771; the nursing notes at United 772 states "current some day smoker."  The other records for visits between 2016-2019 show both nursing and provider notes for each date: "Never Smoker."  United 777, 783, 789, 797, 811, or unknown: 807, 816, 820.  Complaint/Answer ¶ 41; Ex. "60".

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

12.     On July 18, 2022, Anna Dutton of the FOCAS Team reviewed the records from Regional Medical Center of San Jose and concluded: "No misrepresentation found." Ex. "34" and Ex. "264": Daniel Depo 120:25 – 122:8.

13.     Since the claim was on a policy of $100,000 or more, the FOCAS Team could not decide the claim without first requesting a review by the Risk Team in the Underwriting Department and then a review by the Legal Department. Ex. "264": Daniel Depo. 94:3 – 95:8, 126:16-18; Ex. "268": Husmann Depo 159:7-15.

14.     On October 27, 2022, Theresa Daniel of the FOCAS Team noted "No concerns found. Sent to UW [underwriting] for review." Ex. "34"-United 1034, fifth entry from the bottom; Ex. "264": Daniel Depo 126:1-15.

15.     Daniel requested underwriting to "review the claim for payment." Ex. "1"-United 499 and Ex. "264": Daniel Depo 126:23 – 127:15, 130:17 – 131:9; 132:2-5.

16.     The underwriting review was done by LaRae Husmann, whose duties include handling contestable claims. Ex. "268": Husmann Depo. 18:7-16.

17.     In a contestable claims review, Ms. Husmann is "reviewing for any misrepresentation on the application and how, if so, how would affect how we issued the policy." Ex. "268": Husmann Depo 150:5-17, 201:17-24, 245:13-14, 275:16-24, 275:25 – 276:4, 276:3-4.

18.     Special qualifications are needed to evaluate whether a policy should have been issued; "You need an underwriting background": "You've got to be able to review an application, determine if there was a misrep on the application." Ex. "268": Husmann Depo 106:7-15, 168:20 – 169:10, 169:20-24; Ex. "264": Daniel Depo 95:4-12, 97:7-13.

19.     Exs. "1" through "12" constitute all the work Husmann did. Ex. "268": Husmann Depo. 54:23 – 55:7, 61:11 – 62:1, 60:22 – 67:16, 71:12-25, 72:1-3, 72:9-16.

20.     Ms. Husmann did not see any errors that she made. Ex. "268": Husmann Depo; 55:8-13, or mistakes, 73:5-12, or see anything to cause her to change her opinions, 55:14-22, or form new opinions, 5:23 – 56:23.

21.     Husmann wrote on October 31, 2022, in part, as follows:

&ast;     - Get legible records from Zuckerberg

＊      - Discuss with Legal to see if we could use a tobacco misrepresentation when only the July 2020 records indicate tobacco use.

＊      - Advised not pay the claim without more investigation – and requested more investigation.

Complaint/Answer ¶ 58; Ex. "1"-United 499 and Ex. "268" Husmann Depo 74:12 – 76:18.

22.    Husmann never received a response from Legal "to see if we could use a tobacco misrepresentation when only the July 2020 records indicate tobacco use" and does not know if anybody else did. Ex. "268": Husmann Depo 76:13-18, 264:10-25.  Nobody else contacted the Legal Department "to see if we could use a tobacco misrepresentation when only the July 2020 records indicate tobacco use."  Ex "264": Daniel Depo 132:24 – 133:10; and Ex. "265": Frank Depo 141:14 – 142:19.

23.    Ms. Husmann testified that the 7-26-2020 medical record "was a misrepresentation of a tobacco question."  Ex. "268": Husmann Depo 79:13-21, 264:10-12.  She testified "my opinions did not change."  Husmann Depo 55:19 – 56:23, but that she could have changed the wording… to be a little more clear."  56:25 – 57:5. "In my October 2022 notes I could have been more clear as to my opinion that there was a tobacco misrepresentation."  Husmann Depo 74:18-25.  "What I could have been more clear on was stating my opinion that with the July 2020 record indicating that he was a current someday smoker that that would have been a misrep as far as the tobacco question goes."  Husmann Depo 77:18-25; "in my opinion, it was a misrepresentation of a tobacco question" Husmann Depo 79:13-19, also 78:1-10..

24.    United's June 5, 2024, interrogatory answers represent Husmann concluded there was a tobacco misrepresentation.  Ex. "76", pp. 4:3-8, 9:4-9, 14:4-9, 18:16-21, 23:4-11.

25.    On November 8, 2022, Theresa Daniel did what Husmann asked and initiated an additional investigation consisting of: (1) a criminal background investigation of Juan Carlos Campa; and (2) obtain police reports; and (3) obtain coroner's records; and (4) requested "please obtain any missing persons reports for [Juan Carlos Campa] in or around December 2020 as insureds skeletal remains were found in a homeless encampment." Ex. "264": Daniel Depo 133:24 – 137:6; Ex. "34"-United 1035, seventh entry from the top.

7

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

26.	United received a legible record from Zuckerberg San Francisco General Hospital that Juan Carlos Campa never smoked.  Ex. "56" and Ex. "270": Yates Depo 95:4-12

27.	On February 28, 2023, Denise Yates wrote,

"2nd Review - We have received the legible records from Zuckerberg San Francisco General. A WRI criminal investigation was completed, no concerns for last 10 years. With the records and criminal investigation provided, please advise if concerns are present that would have affected issuance of the policy."

Ex. "9"-United 487 and Ex. "270": Yates Depo 94:20 – 95:15.

28.	On March 2, 2023, LaRae Husmann wrote her "2nd Review"  "Where is the information from the police department that shows how the body was identified? We need documentation that shows the remains belonged to our insured. Information in the WRI report shows the police officer saw the lower half of a body decomposed down to the bone.  As of right now, there is no evidence that the skeletal remains found belonged to our insured." Ex. "9"-United 487 and Ex. "268": Husmann Depo 61:11 – 62:1, 65:4-12.

29.	On March 7, 2023, Denise Yates wrote:

3rd Review – With the records and criminal investigation provided, please advise if concerns are present that would have affected issuance of the policy. Located partial WRI report dated 02/03/23, which included the medical examiner's report providing the requested information. Thank you."

Ex. "9"-United 487 and Ex. "270": Yates Depo 96:22 – 98:13.

30.	On March 22, 2023, LaRae Husmann requested a statement on how the application was completed and directed do not pay this claim. Please return to me once we receive the producer statement."  Ex. "9"-United 487-488 and Ex. "268": Husmann Depo 64:15-22.

31.	Ms. Husmann instructed Leslie Handy to conduct a second background investigation, which Handy did at Husmann's request.  Ex. "266": Handy Depo 70:5 – 76:20.

32.	Tom Johnson was assigned to obtain a statement from Ruben Garcia and did so. Exhibits "37", "38", "57", "85", "87", "88" and Ex. "269": Johnson Depo 21:13 – 22:16, 23:6 – 24:13, 28:18-20, 36:17-20, 39:2-8.

33.	On March 30, 2023, LaRae Husmann wrote:"…The agent never spoke to Mr. Campa … Medical records from July 2020 indicated he was a smoker…Corina Campa was the one to answer all the application questions and we assume either her or the agent signed the

8

application for him. … Had we known that the agent only met with Corina Campa to complete the application, the application would have been declined… Had we known that Juan Campa did not sign the application, the application would have been declined... In my opinion, this claim should not be paid since we never received a valid application. Ex. "9"-United 488 and Ex. "268": Husmann Depo 66:8-15, 195:24 – 198:19.

34.    On April 4, 2023, Tom Johnson noted in Ex. "57", "I received a message from UW [Underwriting] that this policy is being rescinded due to the proposed insured not being interviewed as indicated on the app[lication]." Ex. "57" and Ex. "269": Johnson Depo 40:11 – 41:12.

35.    Denise Yates testified that her job concerning contestable claims is to review the claim and make a decision to pay it or rescind.  Ex. "270": Yates Depo 22:13-21.  She testified she made the decision to rescind the Policy.  Ex. "270": Yates Depo 124:8 – 125:9.

36.    On April 18, 2023, Denise Yates called Campa and left a message concerning the claim.  The message stated Campa would receive a letter and a check in the mail.  Ex. "270":Yates Depo 125:10 – 126:16; Campa Dec. ¶ 17.

37.    Juan Carlos Campa never smoked or used tobacco products.  Corina Campa Decl. ¶¶ 7-10.

38.    Juan Carlos Campa manually signed one application.  Corina Campa Decl. ¶ 2, and electronically signed the electronic application.  See Ex. "20".

39.    Nobody ever interviewed Corina Campa concerning whether or not Juan Carlos Campa signed the application or smoked or used tobacco products.  Corina Campa Decl. ¶ 12.

40.    By letter dated April 18, 2023, United wrote Campa, in part:

"…the medical records from Regional Medical Center note that Juan Campa was a smoker…Mr. Campa did not sign the application, as required by our underwriting guidelines…Based on this information, we found that Juan Carlos Campa answered questions regarding tobacco/nicotine use incorrectly and did not sign the application.

Ex. "41" and Ex. "270": Yates Depo 124:23 – 125:2.

41.    By letter dated August 11, 2023, to the General Counsel of both Mutual of Omaha Insurance Company and United, attorney Robert J. Rosati on behalf of Campa, returned,

9

uncashed, the premium refund check, which was sent to Campa with the April 18, 2023, rescission letter and further explained that rescission of The Policy and denial of the claim were improper and that the claim should be paid. Complaint/Answer ¶ 102; Ex. "92": Rosati Decl. ¶ 3.

42.     By email dated August 15, 2023, from Mutual of Omaha's Senior Assistant General Counsel, David Barron, Mutual of Omaha to Robert J. Rosati, acknowledged receipt of the uncashed premium refund check sent to Campa with the letter dated April 18, 2023, and returned by Robert J. Rosati's letter dated August 11, 2023. Complaint ¶ 103; Answer ¶ 103; Ex. "93".

43.     An appeal is if the beneficiary sends a letter challenging the rescission.  Ex. "270": Yates Depo 83:22 – 84:20. Rosati's August 11, 2023, letter to United of Omaha's general counsel, Nancy Crawford (Ex. "94"), was treated as a "appeal" by United Individual Life Claims Department.  Such "appeals" are assigned to one of three Life Claims Specialists, Ex. "265": Frank Depo 74:19 – 75:3, in this case Vanessa Frank.  Ex. "265": Frank Depo 17:8-17, 25:1 – 26:3, she provides "a new set of eyes".  Frank Depo 41:8-18.  The ultimate decision was with her in Life Claims.  Frank Depo 32:9-14.

44.     Ms. Frank first worked on the Campa claim on August 15, 2023.  Frank Depo 21:13 – 24:5. She solicited information from the underwriter, Michelle Heim, and more information from Tom Johnson regarding whether Juan Carlos signed the application.  Ex. "265": Frank Depo 26, 29 - 31; Ex. "266": Heim Depo 87:12 – 88:25, 94:3; Ex. "269":Johnson Depo 67:9 – 71:22; Exhibits "42", "80", "81", and "89".

45.     Ms. Frank testified that she read all or part of Rosati's 8/11/2023, letter to Nancy Crawford.  Ex. "265": Frank Depo 41:19-23, 64:5 – 66:9, 68:12 – 69:8.

46.     On September 7, 2023, Vanessa Frank wrote LaRae Husmann, "Can you please provide an opinion as to whether the use of tobacco in July 2020 (had it been disclosed), would have required tobacco rates, regardless of whether prior records showed no tobacco use." Husmann responded: "Our application was signed 12/30/20. Had he used tobacco in July 2020, the tobacco question would have required a Yes answer. Had we known of this information, the non-tobacco premium class would not have been offered."  Ex. "12"-United 156; Ex. "265": Frank

10

Depo 31:6-23; Ex. "268": Husmann Depo 66:18 – 67:3, 265:9-24.

47.    Husmann obtained no new information for her September 7, 2023, report.  Ex. "268": Husmann Depo 265:11 – 266:2.

48.    Ms. Frank found no information to answer Ms. Husmann's question of whether the single "current same day smoker" was sufficient for a smoking tobacco misrepresentation."  Ex. "265": Frank Depo 141:14 – 142:19.

49.    By letter addressed to Campa's attorney Rosati, dated September 8, 2023, signed by Vanessa Frank, states, in part:

> "… after further investigation and based on the information provided in your letter, we have determined that the rescission based on the failure of Mr. Campa to sign the application should be reversed…However, the application contained a material misrepresentation when it stated that Mr. Campa had not used tobacco in the 12 months before the application, so the decision to rescind the policy based on that misrepresentation was proper."
>
> Ex. "43": Ex. "265": Frank Depo 34:3 – 35:14.

50.    Frank acknowledged that medical records may have mistakes. Ex. "265": Frank Depo 89:11-15; she does not investigate whether a medical record is mistaken.  Frank Depo 90:5 – 91:7. She did not contact Regional Medical Center because "That's not part of our process." Frank Depo 92:9-14.  She did not contact Corina Campa about Juan Carlos smoking.  Frank Depo 87:10-15.

51.    Frank conducted no other investigation concerning Campa's claim.  Ex. "265": Frank Depo 87:10-15, 90:5-11, 90:25 – 91:7, 91:22 – 92:14, 96:16-24.

52.    Plaintiff incorporates by reference Undisputed Facts Nos.  1 - 51 and supporting evidence thereto.

53.    After requesting the completion of the claim forms, nobody at United ever requested that Corina Campa ever provide any additional information, except to request that she sign additional authorizations concerning its contestable claim investigation.  Corina Campa Decl. ¶¶ 11, 12, 13; See Exhibits "41," "43," and "227" – "245."

54.    Plaintiff incorporates by reference Undisputed Facts Nos.  1 - 53 and supporting evidence thereto.

11

55.    Husmann believed that it was proper to rescind the Campa Policy because she concluded that Juan Carlos Campa had not signed the application.  Ex. "268": Husmann Depo 180:8 – 182:12.

56.    Husmann did not contact Corina Campa or cause her to be contacted to ask her if Juan Carlos Campa had signed the application or to ask her if Juan Carlos Campa smoked or used tobacco products because it is not United's practice to do so.  Ex. "268": Husmann Depo 182:8 – 184:4.

57.    Husmann always assumes medical records are accurate.  Ex. "268": Husmann Depo 174:9-11, 262:23 – 263:1.

58.    Husmann had concerns that the agent did not meet with Juan and ask Juan all the medical questions. Ex. "268": Husmann Depo 221:11-14.  In Husmann's mind, "it was an invalid application" because the agent only met with Corina Campa. Husmann Depo 227:10–24.  In Husmann's opinion, if Juan Carlos did not sign the application that would be a misrepresentation. Husmann Depo 180:8-20, but she doesn't know who fault that would have been. Ex. "268": Husmann Depo 180:24 – 181:14.

59.    Husmann typically does not interview persons such as Corina, only the agent, to find out how the application was taken. Ex. "268": Husmann Depo 182:8 – 183:18, "It's just not our practice" 186:7-12, 190:13-19, 209:6 – 210:1; see also Ex. "269": Johnson Depo 26:19 – 27:22.

## VI. UNITED CANNOT MEET ITS BURDEN OF PROOF TO RESCIND THE POLICY

A.    United Has the Burden to Prove a Material Misrepresentation

Rescission is an affirmative defense. *Atmel Corporation v. St. Paul Fire & Marine Insurance Company*, 416 F. Supp. 2d 802, 805-806 (N.D. Cal. 2006).  United has the burden of proof. *Thompson v. Occidental Life Insurance Co.*, 9 Cal. 3d 904, 919, 513 P.2d 353, 109 Cal. Rptr. 473 (1973).  There are three factors which a court looks at in determining whether an insurance company has the right to rescind:  (1) whether the insured misrepresented or concealed information in the application for insurance; (2) whether the information misrepresented or

concealed was material; and (3) whether the insured knew that it had made a material misrepresentation or concealment. *Atmel, supra*, 416 F. Supp. 2d at 808. A claimed misrepresentation must be material because "[a]n incorrect answer on an insurance application does not give rise to the defense of fraud where the true facts, if known, would not have made the contract less desirable to the insurer." *Thompson, supra*, 9 Cal. 3d at 916. "The test of materiality here is a subjective test: the effect which truthful answers would have had upon the insurer." *Burns v. Prudential Ins. Co. of America,* 201 Cal. App. 2d 868, 871, 20 Cal. Rptr. 535 (1962).

Here, even if the "current some day smoker" evidence is admitted, it is not evidence that Juan Carlos misrepresented or concealed information in the application; it is only provides a basis for speculation. Second, there is no evidence that use of tobacco, if proven, was material because that requires admissible evidence (none) of a misrepresentation (only speculation) and expert underwriting opinion (Husmann's 9/7/2023, report of that conclusion is inadmissible; her testimony is inadmissible because she was not designated as an expert).

B.    Ms. Husmann's Reports and Testimony / Other Evidence

Ms. Husmann reviewed Exhibits 1 – 12 on the record in her deposition. Ex. "268": Husmann Depo. 58:5-67:3. She acknowledged that that was all there was; she did not write any other reports, Exhibit "268"-Husmann Depo. 67:7-12; she had no other contacts that are not documented in Exhibits "1" – "12", concerning the Campa claim. Ex. "268": Husmann Depo. 67:13-16. All of the work she did on the Campa claim is in Exhibits "1" – "12". Ex. "268": Husmann Depo. 71:9-72:3. Exhibits "1" – "12" have all of her written communications that she participated in concerning the Campa claim and there were no verbal communications or other communications regarding Juan Carlos Campa. Ex. "268": Husmann Depo. 72:13-73:1.

In her reports Husmann never wrote that the July 26, 2020 "current some day smoker" record demonstrated a misrepresentation; she wrote: "discuss with Legal to see if we could use a tobacco misrepresentation when only the July 2020 records indicate tobacco use." Exhibit "1", United 500, but never did and did not know if anywhere else did and did not remember if she ever got the question answered. Ex. "268": Husmann Depo. 76:2-21. Then, in her deposition, she claimed she always thought it did: she testified, "What I could have been more clear on was

13

stating my opinion that the July 2020 records indicating he was a current some day smoker that that would have been a misrep as far as the tobacco question goes." Husmann Depo. 77:18-25. See Fact No. 23.

Husmann's 9/7/2023, report Exhibit "12"-United 156 is inadmissible because it was solicited after and in response to a threat of litigation. See Rosati's August 11, 2023, letter (Exhibit "92").

Ms. Yates wrote that Juan Carlos misrepresented his smoking history. Ms. Frank testified that he did so. If the "current some day smoker" evidence were admissible, those opinions would nonetheless be lay opinion testimony based on speculation and thus inadmissible. Additionally, those opinions contradict Unted's judicial admission concerning Husmann's opinions and so are not admissible for that reason, as well.

C.    Ms. Husmann's Opinions that: (1) Juan Carlos Misrepresented His Smoking History; and (2) Such Misrepresentation Was Material Are Inadmissible

1.    Expert Opinion of Undesignated Expert

United disclosed no expert witnesses. Rosati Declaration ("Rosati Decl.") ¶ 5.

Ms. Husmann is a classic "hybrid" witness - - a fact witness with expertise that will inform her testimony and who must testify from personal knowledge gained on the job. When a party presents opinion evidence from a hybrid witness, it still must disclose the subject matter in which the witness is expected to present evidence and provide a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. § 26(a)(2)(C). *Timpson v. Anderson County Disabilities and Special Needs Board*, 31 F.4th 238, 253 (4th Cir 2022); *see also Downey v. Bob's Discount, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011); *see also Goodman v. Staples, The Office Superstore, LLC*, 644 F.3d 817, 825-826 (9th Cir. 2011). When a party fails to make the disclosures required by Rule 26(a), the party is not allowed to use the witness to supply evidence at trial or motion unless it establishes that the failure was substantially justified or is harmless. Fed. R. Civ. P. § 37(c)(1); *see also Goodman, supra*, 644 F3d. at 827; *Timpson, supra*, 31 F.4th at 253. Therefore, Ms. Husmann's expert opinions must be excluded unless otherwise properly admitted.

14

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

2.    Husmann's opinions are expert not lay opinions.

Mr. Husmann's opinions are based on facts about Campa's application made known to her and on her professional expertise - - classic expert, not lay opinion, testimony. *See Teen-Ed v. Kimball International, Inc.*, 620 F.2d 399, 404 (3d Cir. 1980). Only an expert witness, not a lay witness under Rule 701, can offer opinions not based on first-hand knowledge. *Certain Underwriters at Lloyd's v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000). Lay opinion testimony may be admitted if: (1) it is helpful to the jury; (2) if it is based on the perception of the witness; and (3) if it is not expert testimony under Fed. R. Evid. 702. See Fed. R. Evid. 701. A lay witness may not express an opinion on matters which are beyond the realm of common experience, and which require the special skill and knowledge of an expert witness. *United States v. Figueroa-Lopez*, 125 F. 3d 1241, 1246 (9th Cir. 1997).

The line between lay and expert opinion depends on the basis of the opinion, not its subject matter. *United States v. Barragan*, 871 F.3d 689, 704 (9th Cir. 2017). Opinion testimony based on specialized knowledge is expert testimony. *Id*; *see also United States v. Jimenez-Chaidez,* 96 F. 4th 1257, 1267 (9th Cir. 2024). Ms. Husmann's opinions were based on her specialized training and knowledge. Fact 18. Therefore, her opinions are <u>expert</u> opinions.

3.    Lay or expert opinions based on speculation are inadmissible

An expert opinion not sufficiently founded on facts but only an assumption or speculation is properly excluded. *Guidroz-Brault v. Missouri Pacific Railroad Company*, 254 F.3d 825, 830-831 (9th Cir. 2001): expert opinion that locomotive engineers had a duty to maintain a lookout for what was in front of the train provided no basis for an assumption that there was some defect to be seen. An expert's conclusions based on speculation and "gut" interpretation properly excluded on summary judgment. *Martinez v. United States*, 997 F.3d 867, 877 & n.1 (9th Cir. 2021).

"Expert testimony cannot create a genuine issue of material fact if it rests an assumption that are not supported by the evidence." *Stephens v. Union Pacific Railroad Company*, 935 F.3d 852, 856 (9th Cir. 2019). "A party's own speculation is insufficient to create a genuine issue of material fact (citation), and a party cannot make it sufficient simply by finding an expert who is

15

willing to assume its correctness." *Id*. at 856-857.  An expert's assumption of facts that the party has failed to establish cannot, on its own, create a dispute of material fact.  *Id*. at 857-858.

"Rule 701 of the Federal Rules of Evidence 'allows a lay witness to offer opinions that are (a) rationally based on the witness's perception; (b) helpful to the jury, and (c) not based on scientific, technical, or other specialized knowledge within the scope of expert testimony." *United States v. Perez*, 962 F.3d 420, 435 (9th Cir. 2020), quoting *United States v. Gadson*, 763 F.3d 1189, 1206 (9th Cir. 2014).  But even proper lay opinion testimony may not be "based on speculation." *U.S. v. Perez, supra*, at 435.  Thus, even if the "current some day smoker" is admissible and even if the opinion that there <u>was</u> a misrepresentation as to smoking tobacco is treated as a <u>lay</u> opinion by anybody, that opinion is inadmissible as speculation.

4.      <u>Ms. Husmann's Opinion that Juan Carlos misrepresented his smoking history is pure speculation</u>.

Personal opinion and speculation are inadmissible.  *Ollier v. Sweetwater Union High School District*, 768 F.3d 843, 861 (9th Cir. 2014).  "Expert testimony cannot create a genuine issue of material fact if it rests on assumptions that are not supported by the evidence… The expert's opinion must rest on facts or data, not merely on assumptions and speculation.  A party's own speculation is insufficient, and a party cannot make it sufficient simply by finding an expert who is willing to assume its correctness.  *Stevens v. Union Pacific Railroad Co..*, 935 F.3d 852, 856 (9th Cir. 2019), internal quotations and citations omitted.

Thus, in *Neely v. St. Paul Fire and Marine Ins. Co.*, 584 F. 2d 341 (9th Cir. 1978), the issue presented was whether the oil company that provided the oil or the insurance company that insured three natural-gas-powered engines which became inoperable due to damage caused by contaminated lubricating oil was liable for the damages.  The plaintiff engine owner claimed that either the contaminant was in the oil at the time of the purchase, in which case the oil company was liable, or the contaminant was placed in the oil by a vandal, in which case the insurance company was liable.  The district court granted summary judgment for both defendants and the Ninth Circuit affirmed.  The Ninth Circuit explained:

"a case may not be taken from the jury where contradictory inferences may be drawn

16

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

from undisputed evidentiary facts…these inferences must have a sufficient evidentiary basis…" …"The verdict of a jury cannot rest on guess or speculation…That defendant's negligence could *possibly* have been the cause is not sufficient.   The same rule applies where, as here, the evidence leaves the cause of an accident uncertain. The jury is not permitted to speculate in choosing one of alternative possibilities but is restricted to reasonable inferences based upon facts…"

Our careful review of the case in light of these principles leads us to conclude that the meager evidence presented by the plaintiff here would not rationally support a verdict in his favor. In order to draw one of the two inferences necessary to a finding of liability against either of the defendants, a jury would inevitably have to rely in large part upon surmise and speculation…Parties are entitled to have the determination of their rights rest on more than speculation and guesswork. Here, the connection between the proffered evidence and the conclusions urged is too tenuous to permit a jury to make it."
*Id*. at 345-346, internal citations omitted.

Similarly, in *Juan H. v. Allen*, 408 F.3d 1262, 1277-1279 (9th Cir. 2005), the Ninth Circuit held that the trial record did not support the conclusion that Juan H. left the murder scene in common flight with Merendon.  The undisputed evidence showed that Merendon ran to his car and drove to the home of Rubio, while Juan H. ran home to his family's trailer and was located there when the police arrived. No reasonable trier of fact could find evidence of criminal culpability in the decision of a teenager to run home from the scene of a shooting, regardless of whether the home was in the same general direction as the car of a fleeing suspect.  Likewise, any rational factfinder would find little or no evidence of guilt in the fact that Juan H. attempted, along with the rest of his family, to leave his home as it was being surrounded by an angry mob of neighbors.  *Id*. at 1277.  The Ninth Circuit explained, "although we must draw all reasonable inferences in favor of the prosecution, a "reasonable" inference is one that is supported by a chain of logic, rather than, as in this case, mere speculation dressed up in the guise of evidence."  *Id*. at 1277.  "Speculation and conjecture cannot take the place of reasonable inferences and evidence -- whether direct or circumstantial… it is only speculation that supports a conclusion that Juan H. knew that Merendon planned to commit the first-degree murders…" *Id*. at 1279.

Here, even if the "current some day smoker" evidence is admissible in the evidence, the jury would be left to guess or speculate about whether Juan Carlos used tobacco or whether he misunderstood the question or whether the intake nurse made a mistake in completing the form. Any conclusion on these facts is "mere speculation" dressed up in the guise of evidence because there is no information for the jury to infer one way or the other.

17

5.    Ms. Husmann's 9/7/2023 Report is not admissible as a business record.

Ms. Husmann's 9/7/2023 report is not admissible as a business record under FRE § 803(6) because it was prepared after a dispute arose and in anticipation of litigation, and therefore lacks indica of reliability, given the circumstances of its preparation. *Paddock v. Dave Christensen, Inc.*, 745 F. 2d 1254, 1258-1259 (9th Cir. 1984). The report is only admissible as either prior inconsistent statements by Husmann, or to show the basis for her opinion. *See Paddock, supra*, at 1262-1263, *see also FRE* § 613 regarding prior inconsistent statements. Since Husmann was not designated as an expert, she cannot offer her opinion at trial.

6.    Ms. Husmann's deposition opinion about the 7/26/2020 medical record is inadmissible because it violates the Best Evidence Rule.

Husmann's reports are the best evidence of their own content. *United States v. Workinger* 90 F.3d 1409, 1415 (9th Cir. 1996). Husmann's testimony about what she claims is the content of her first report is inadmissible under the Best Evidence Rule. *Los Angeles News Service v. CBS Broadcasting, Inc.*, 305 F. 3d 924, 935 (9th Cir. 2002). The modern justification for the Best Evidence Rule has expanded to a recognition that writings occupy a central position in the law. When the contents of a writing are at issue, oral testimony as to the terms of the writing is subject to a greater risk of error than oral testimony as to events or other situations. *Seiler v. Lucas Films, LTD*, 808 F.2d 1316, 1319 (9th Cir. 1986). Husmann's testimony contradicting her own written report is thus inadmissible under FRE §1004 and should be excluded.

7.    No reasonable jury could believe Ms. Husmann's testimony about the meaning of her first report.

Husmann's deposition testimony about the meaning of her first report - - see Facts No. 23 - - (and United's interrogatory answers) are blatantly contradicted by the documentary evidence. Therefore, there is no genuine issue for trial because no reasonable jury could believe her testimony and this Court does not adopt that version of the facts for the purpose of ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Cit 1769 (2007). Ms. Husmann's conclusory testimony is contrary to her written report, it is insufficient to create a triable issue of fact. *See, e.g., Burroughs v. City of Tucson*, 795 Fed. Appx. 1003, 1004 (9th Cir. 2020): plaintiff's

18

conclusory self-serving assertion of a disability is contrary to his prior written submissions and opinions of examining doctors, did not raise factual dispute; *Estate of Stern and Tuscan Retreat, Inc.*, 725 Fed. Appx. 518, 522-524 (9th Cir. 2018): statements that decedent lacked competence at relevant time offered to prove tolling of statute of limitations "blatantly contradicted by the record" of documentary and other evidence and "too vague, conclusory and speculative" because "bereft of essential details as to [decedent's] memory challenges such as those concerning their frequency and severity."

8.    The Current Some Day Smoker" Evidence is Hearsay Inadmissible Pursuant to FRE 803(4).

The "current some day smoker" evidence is hearsay which is not admissible under Fed. R. Evid 803(4) because there is no evidence that it was made for purposes of medical diagnosis or treatment and was "reasonably pertinent" to that subject. *See Guam v. Ignacio*, 10 F.3d 608, 613 (9th Cir. 1993). "An adequate foundation may be laid under Rule 803(4) by introducing objective evidence of the context in which the statement were made (citation). That evidence can include testimony provided by the medical professional who conducted the examination." *United States v. Kootswatewa*, 893 F.3d 1127, 1133 (9th Cir. 2018); see also *United States v. Latu*, 46 F. 4th 1175, 1179 (9th Cir. 2022). The record itself does not provide facts or context from which a foundation can be inferred because, unlike every other record, only the intake nurse asked about smoking; the provider <u>did</u> <u>not</u>. Given that distinction, the record does not provide a basis to infer the statement was made for the purposes of medical diagnosis or treatment or to admit the evidence because the professional who diagnosed and treated did not ask the question. United cannot cure this absence at trial by calling the provider to testify - - because it did not designate her as a non-retained expert. See Rosati Decl. ¶ 5.

D.    Conclusion

The "current some day smoker" evidence is hearsay. Even if admitted, it does not provide evidence to prove a misrepresentation - - it only provides a basis to speculate. Ms. Husmann's opinions that there was: (1) a material; and (2) misrepresentation, are inadmissible for multiple reasons. United cannot prove its defense of rescission.

19

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

## VII.    CORINA CAMPA IS ENTITLED TO PREVAIL ON BREACH OF CONTRACT

The elements of a claim for breach of contract under California law are the existence of contract, plaintiff's performance or excuse of non-performance, defendant's breach, and damages to plaintiff as a result of the breach. *Klees v. Liberty Life Insurance Company of Boston,* 110 F. Supp. 3d at 978 (C.D. Cal. 2015).   These facts are undisputed.  Therefore, Campa is entitled to summary adjudication that United breached the contract and she is entitled to the $100,000 death benefit, and only the amount of pre-judgment interest is left for trial on her first claim.

## VIII.    UNITED ACTED IN BAD FAITH

"In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Insurance Co.,*237 F.3d 978, 992 (9th Cir. 2001).  An insurer breaches the implied covenant of good faith and fair dealing when it fails to properly investigate the insured's claim. *Egan v. Mutual of Omaha Ins. Co.,*24 Cal. 3d 809, 817, 598 P. 2d 452, 157 Cal. Rptr. 482 (1979).  "An insurer's good or bad faith must be evaluated in light of the totality of circumstances. *Wilson v. 21st Century Ins. Co.,* 42 Cal. 4th 713, 723, 171 P. 3d 1082, 68 Cal. Rptr. 3d 746 (2007).

"Among the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of the claim." *Shade Foods, Inc. v. Innovative Products Sales and Marketing, Inc.*, 78 Cal. App. 4th 847, 879, 93 Cal. Rptr. 2d 364 (2000): an unreasonable failure to investigate amounting to unfair dealing may be found when an insurer fails to consider or seek to discover evidence relevant to the issues of liability and damages. *Id*. at 880.  In *Shade Foods*, the court affirmed findings of bad faith and an award of punitive damages, reasoning that the jury could reasonably infer that the insurer acted in bad faith by not investigating the relationship between two parties to the underlying dispute or consulting the general agent who issued the policy *Id*. at 881.  In the absence of a meaningful investigation the insurer relied upon an exclusion for which it had no evidentiary basis; the record suggested that the insurer "looked the other way," when confronted with facts revealing the possibility of coverage, resisting both reasonable interpretation of policy language and the facts concerning the history of the negotiations to secure coverage. *Id*.

20

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

at 882.

Similarly, in *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1624, 50 Cal. Rptr. 2d 224 (1996), the court held that the issue was whether the insurer considered "all the information reasonably available to it at the time it denied the claim, and whether that information provided a basis for coverage." *Mariscal* held that the insurer "did not fulfill its duty to obtain the readily available statements of all the percipient witnesses," failing to contact the relevant witnesses including a doctor. *Id*. at 1624. Therefore, the court affirmed the award of policy benefits plus tort damages for economic loss and emotional distress and damages for attorney's fees and interest. *Id*. at 1622.

"The covenant of good faith and fair dealing … places the burden on the insurer to seek information relevant to the claim." *Hughes v. Blue Cross of Northern California*, 215 Cal. App. 3d 832, 846, 263 Cal. Rptr. 850 (1989). For the genuine dispute rule to apply, United's rescission/denial must be founded on basis that is reasonable under all of the circumstances. *Zubillaga v. Allstate Indemnity Co.*, 12 Cal. App. 5th 1017, 1028, 219 Cal. Rptr. 3d 620 (2017); *Ghazarian v. Magellan Health Inc.*, 53 Cal. App. 5th 171, 187, 266 Cal. Rptr. 3d 841 (2020).

An "insurer's denial or delay in paying benefits gives rise to tort damages only if the insured shows the denial or delay was unreasonable. (Citation.) As a close corollary of that principle, it has been said that 'an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.' . . . (¶) "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process, and evaluate the insured's claim. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Wilson v. 21st Century Insurance Company, supra,* 42 Cal. 4th at 723-724. (emphasis in original.) "In the insurance bad faith context, a dispute is not 'legitimate' unless it is founded on a basis that is reasonable under all the circumstances." *Wilson, supra,* 42 Cal. 4th 724, n. 7. A dispute based on an unreasonable position, such as where the jury could find the insurer lacked any factual basis for a medical conclusion and that it unfairly ignored medical evidence

21

submitted by the insured in reaching its medical conclusion, is not a proper basis for summary judgment. *Wilson, supra,* 42 Cal. 4th at 724. "An insurer cannot claim the benefit of the genuine dispute doctrine based on an investigation or evaluation of the insured's claim that is not full, fair, and thorough." *Bosetti v. United States Life Insurance Company, etc.,* 175 Cal. App. 4th 1208, 1237 (2009). Whether the insurer's delay or denial of policy benefits was founded on a basis that is reasonable under all the circumstances "is an <u>objective</u> standard." *Bosetti,*175 Cal. App. 4th at 1237. That is, the question presented is whether the records suggests that the insurer's investigation into the claim "was in any way biased, inadequate, superficial or otherwise unworthy of reliance by an objectively reasonable insurer." *Bosetti* at 1240.

The April 18, 2023, decision to rescind the Policy and deny the claim was plainly <u>not</u> reasonable. First, it was based on pure speculation. Second, United's later investigation quickly demonstrated that the conclusion Juan Carlos did not sign the application was unfounded. Third, "It is well established that signature of an insured to an application is not necessary to predicate the issuance of a valid insurance policy, and this is so even though the policy inferentially requires the signature of the insured the application…" *Meyer v. Johnson*, 7 Cal. App. 604, 611, 46 P.2d 822 (1935); *see also Crump v. Northwestern National Life Ins. Co.*, 236 Cal. App. 2d 149, 155, 45 Cal. Rptr. 814 (1965): same. *Kincer v. Reserve Insurance Co.*, 11 Cal. App. 3d 714, 718, 90 Cal. Rptr. 94 (1970): same. Husmann's reason - - see Facts No. 55 - - is legally invalid.

Fourth, the stated basis for concluding that Juan Carlos Campa did not sign the application was pure speculation by LaRae Husmann that either Corina Campa or Ruben Garcia, Jr. signed the application on behalf of Juan Carlos Campa. See Facts No. 33. The fact that LaRae Husmann speculated necessarily compels the conclusion that nobody asked Ruben Garcia, Jr. Fourth, nobody asked Corina Campa. Fifth, Husmann's concerns that the agent did not meet with Juan Carlos, see Fact No. 58, is legally invalid. As a matter of law, United knew what Ruben Garcia knew. California Insurance Code § 1704.5 treats an agent selling life insurance differently from agents, selling other classes of insurance. By operation of law an agent submitting an application for a life insurance policy, which is then issued by an insurer, is the <u>insurer's</u> agent and the insurer is responsible for the agent's actions and information known to the

22

agent imputed to the principal whether or not Garcia conveyed that information to United. *O'Riordan v. Federal Kemper Life Assurance Co.*, 36 Cal. 4 281, 30 Cal. Rptr 3d 507, 114 P. 3d 753 (2005); *see also Williams v. National Western Life insurance Company*, 78 Cal. App. 5th 500, 525-527, 293 Cal. Rptr 3d 698 (2022).

That the "current some day smoker" evidence is inadmissible, does not necessarily make reliance upon it unreasonable. But the conclusion United draws from that evidence is plainly pure speculation - - and was known to be so. See especially Facts Nos.12, 14, 15, 21, 22, 34, 47, and 48. A decision based on speculation is unreasonable. United made no effort to investigate the validity of Campa's claim: it did not interview Corina Campa or obtain information from Regional Medical Center of San Jose about the inconsistencies between this statement and all the others. See Fact Nos. 51, 53, 56, 57, and 59. United was required to seek out such information but did not do so. Pure speculation and assumptions (that medical records are accurate) and a complete failure to interview known witnesses and invalid legal opinions is not a reasonable investigation.

## IX.    CONCLUSION

Viewing the evidence and the inferences which might be drawn in light most favorable to United, it is apparent that Campa would be entitled to a directed verdict on these issues if the case were to proceed to trial; therefore, summary adjudication of these issues in her favor is proper.

DATED: February 11, 2025

By:    */s/ Robert J. Rosati*
Robert J. Rosati, Esq.
Raquel M. Busani, Esq.

Attorneys for Plaintiff, *Corina Campa*

23

**PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

**CERTIFICATE OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF FRESNO

I, **LEANNE CAPUCHIN**, certify and declare as follows: I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 6485 N. Palm Avenue, Suite 105, Fresno, California 93704.

I hereby certify that on **February 11, 2025**, I served the foregoing documents described as: **PLAINTIFF CORINA CAMPA'S' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF THE ISSUES** on the interested parties as follows:

Robert E. Hess, Esq.
rhess@maynardnexsen.com                 *Attorneys for Defendant, UNITED OF*
Karen T. Tsui, Esq.                     *OMAHA LIFE INSURANCE COMPANY*
ktsui@maynardnexsen.com
MAYNARD NEXSEN LLP
10100 Santa Monica Boulevard, Ste. 550
Los Angeles, CA 90067

[ X ]    **ELECTRONICALLY:** I caused a true and correct copy thereof to be electronically filed using the Court's Electronic Court Filing ("ECF") System and service was completed by electronic means by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System. I served those parties who are not registered participants of the ECF System as indicated below.

[  ]     I placed the [ ] original / [ ] a true copy thereof enclosed in a sealed envelope(s) to the parties listed above and caused such envelope(s) to be delivered by:
     [  ] U.S. POSTAL SERVICE [  ] OVERNIGHT DELIVERY

[  ]     BY EMAIL: I electronically transmitted a true and correct copy thereof to the interested parties' electronic notification address(es) of record before close of business for the purpose of effecting service and the transmission was reported as complete and without error.

I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on **February 11, 2025**, at Fresno, California.


     /s/ *Leanne K. Capuchin*
     LEANNE K. CAPUCHIN